IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES WALKER, | |
| Plaintiff, | |
| v. | Case No. 3:21-CV-1171-NJR |
| KIMBERLY BUTLER, | |
| Defendant. | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff James Walker, an inmate of the Illinois Department of Corrections, filed this lawsuit pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights while he was housed at Menard Correctional Center ("Menard"). Walker is proceeding on his claims that Defendant Kimberly Butler violated the First Amendment when she moved him to a smaller cell in Menard's North 2 cell house in retaliation for filing grievances and lawsuits (Count 1) and that Butler violated the Eighth Amendment's prohibition against cruel and unusual punishment when she housed Walker in that cell, which had unsanitary living conditions (Count 3).

Defendant Kimberly Butler has now filed a Motion for Summary Judgment. (Doc. 67). Walker filed a response in opposition. (Doc. 70). For the reasons set forth below, the motion is granted.

### BACKGROUND

The following facts are deemed undisputed for purposes of Butler's Motion for Summary Judgment.

At all times relevant to this case, Walker was an inmate at Menard and Butler was the Warden at Menard. (Doc. 67-1 at p. 4). In September 2014, Walker filed an emergency grievance regarding his living conditions in the East Cell House at Menard. (Doc. 70-1 at p. 27). Walker testified that he had also filed a motion for a restraining order in Cook County, Illinois, against multiple correctional officers in the East Cell House for messing with his mail, moving him around, and not giving him hygiene products. (Doc. 67-1 at p. 5). Walker testified that on December 4, 2014, after his case seeking a restraining order was dismissed, he was moved to the North 2 Cell House. (*Id.* at p. 6).

Walker complained to the gallery officer that his cell in North 2 was very small, the mattress was stained, and both the mattress and pillow smelled like urine. (Doc. 67-1 at pp. 8-9). Walker testified that North 2 also had plumbing issues with its sinks and toilets, there were bugs, there was a lack of adequate cleaning supplies, and it was very cold because the heat did not work. (*Id.* at pp. 9-10). Walker testified that he had to get a plunger to make the toilet water go down so his cell would not flood. (*Id.* at p. 10).

Walker wrote grievances to Butler complaining about his cell conditions.[1] (*Id.* at p. 10). While Walker did not have the chance to talk to Butler directly, he testified that he made Butler aware of his complaints through the grievances that he filed, as "that's the only procedure that I had available to me at that time to make anyone aware." (*Id.* at p. 11). Walker was moved from general population in North 2 to the segregation unit in North 2 on March 4, 2015. (*Id.* at p. 7). Walker was moved out of North 2 on May 21, 2015. (Doc. 67-2 at p. 1).

---

[1] Defendants did not file a motion for summary judgment on the issue of exhaustion of administrative remedies in this case, thereby conceding that Walker adequately grieved his claims.

**LEGAL STANDARD**

Summary judgment is appropriate where there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In determining whether a genuine issue of fact exists, the Court views the evidence and draws all reasonable inferences in favor of the non-moving party. *Ziccarelli v. Dart*, 35 F.4th 1079, 1083 (7th Cir. 2022). Once the moving party sets forth the basis for summary judgment, the burden shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. FED. R. CIV. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323.

**DISCUSSION**

**I.    *Res Judicata* Does Not Bar Walker's Conditions of Confinement Claim**

Butler first argues that Walker's Eighth Amendment conditions of confinement claim should be dismissed because it is duplicative or because it is barred under the doctrine of *res judicata*. Defendants assert this claim was litigated to a final judgment in a separate case involving the same parties and cause of action. *See Walker v. Butler*, Case No. 17-cv-447-SMY. In response, Walker disputes that this issue involving Butler was fully litigated in the separate action.

The doctrine of *res judicata*, or claim preclusion, "bars litigating claims which were, or could have been, decided in a prior suit, even if the fresh attempt relies on marginally

different theories, so long as there is (1) an identity of the parties or their privies; (2) [an] identity of the cause of action; and (3) a final judgment on the merits." *United States ex rel. Conner v. Mahajan*, 877 F.3d 264, 271 (7th Cir. 2017) (quotations and citations omitted).

Here, the parties are the same, and there was a final judgment in Case No. 17-cv-447-SMY. Thus, the only disputed element is whether there was "identity of the cause of action." "Two causes of action are identical if each claim is supported by the same factual allegations and the judgment in each case would be based on the same evidence." *Id.* (internal citations omitted).

This case has a long and complicated procedural history, which the undersigned detailed in its Order on Defendants' motion to dismiss. (*See* Doc. 36). The case was originally filed in 2015, and it has been severed numerous times with multiple amended complaints. To that end, the Court has thoroughly reviewed the record in Case No. 19-cv-447-SMY. There, District Judge Staci M. Yandle found that Walker exhausted a grievance he filed against Butler on March 18, 2015. Case No. 19-cv-447-SMY at Doc. 67. In that grievance, Walker named Butler and complained that he was being subject to inhumane living conditions, including inadequate cell room plumbing, improper bedding, lack of cleaning supplies, clothing, shower, shower shoes, and soap in North 2's *segregation unit*, which he entered on March 4, 2015. *Id.* at Doc. 48-3 at pp. 42-45. Butler was deemed *not* to have exhausted a grievance he filed on January 21, 2015 (which was the re-submission of a grievance first filed on December 7, 2014) regarding unsanitary bedding, unsatisfactory plumbing, vermin infestation, and other harmful living conditions in North 2's *general population* galleries. *Id.* at Doc. 59 at p. 11; Doc. 2-1 at p. 22;

Doc. 48-3 at pp. 98-99. Thus, he was not allowed to proceed on his claim regarding the conditions of confinement in North 2's general population galleries, and that claim necessarily was not part of the judgment in that case.

In this case, Walker is suing Butler for violating the Eighth Amendment's prohibition against cruel and unusual punishment when she placed him in a smaller cell with unsanitary living conditions in North 2's general population unit, which he filed a grievance about on December 7, 2014, and refiled on January 21, 2015. Because this claim was not allowed to proceed in Case No. 19-cv-447-SMY, it is not duplicative or barred by *res judicata* in this case.

## II.   Unconstitutional Conditions of Confinement

Alternatively, Butler argues she did not subject Walker to unconstitutional conditions of confinement when the cell conditions did not cause an excessive risk to Walker's safety. Butler contends that Walker suffered no injuries from the alleged conditions other than a generic cold and cough. And Walker's other complaints about the cell were nothing more than minor inconveniences and discomfort that is part of the penalty that criminal offenders pay for their offenses against society.

Although "the Constitution does not mandate comfortable prisons," it does mandate humane ones. *Thomas v. Blackard*, 2 F.4th 716, 719 (7th Cir. 2021) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)); *see also Farmer v. Brennan*, 511 U.S. 825, 832 (1994). By prohibiting cruel and unusual punishment, the Eighth Amendment imposes duties on prison officials to "provide humane conditions of confinement" and "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Id.* (quoting *Farmer*,

511 U.S. at 832). The Seventh Circuit has explained that prison officials must "provide inmates with reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities." *Id.* at 720 (quoting *Hardeman v. Curran*, 933 F.3d 816, 820 (7th Cir. 2019)). A prison official who fails to uphold these duties violates the Eighth Amendment upon exhibiting "deliberate indifference to a substantial risk of serious harm to an inmate." *Id.* at 719.

The deliberate indifference standard has an objective and subjective component. *Id.* First, the prisoner must show that the conditions of confinement were sufficiently serious as an objective matter, meaning the inmate was denied of "'the minimal civilized measure of life's necessities,' creating an excessive risk to the inmate's health and safety." *Id.* (quoting *Isby v. Brown*, 856 F.3d 508, 521 (7th Cir. 2017)). Second, "the inmate must prove that prison officials acted with deliberate indifference—that they knew of and disregarded this excessive risk of harm to the inmate." *Id.* at 720.

In this case, the evidence is that Walker was placed in a cell with a stained mattress and pillow that smelled like urine, though he had sheets that he brought with him from his previous cell. (*Id.* at pp. 8-9). The cell was also "very small" such that he could not stretch or exercise. (*Id.* at pp. 9-10). Walker testified that the sink would sometimes stop up and a stench would come up through the sink. (*Id.* at p. 10). The toilet would also "back up a little bit" and he had to use a plunger or it would flood the cell. (*Id.* at pp. 9-10). Regarding bugs, Walker testified that at times "you can see a lot of bugs and sometimes you saw less." (*Id.*). Walker further testified that there was a lack of cleaning supplies, and it was so cold in 3 gallery due to a mechanical issue with the heat that he

got sick two or three times. (*Id.* at p. 10). Walker believes he got colds because he could not get warmed up. (*Id.*). Walker contends that, taken together, these conditions constitute a violation of the Eighth Amendment.

While the Court acknowledges this is a close call, ultimately the evidence falls short of proving a violation of Walker's Eighth Amendment rights. Unlike cases where unconstitutional conditions of confinement have been found, Walker had sheets for the mattress, a working toilet, and running water. *See Taylor v. Riojas*, 592 U.S. 7, 8-9 (2020) (inmate was forced to sleep naked on floor in raw sewage caused by clogged drain overflowing with bodily waste); *Vinning-El v. Long*, 482 F.3d 923, 924 (7th Cir. 2007) (inmate held in cell smeared with feces and blood, with no working sink or toilet and no mattress). While the plumbing occasionally backed up and required a plunger, that is not a problem unique to prisons. And, while Walker claims that his cell was "very cold," there is no evidence the temperature in the cell "reached inhumane levels" or that his colds were caused by the alleged lack of heat. *See Howard v. Cole*, No. 21-CV-933-PP, 2025 WL 485530, at *7 (E.D. Wis. Feb. 13, 2025). Finally, although Walker testified there was a lack of adequate cleaning supplies, "[a] short-term deprivation of hygienic products, even one that causes considerable discomfort or unpleasantness, does not raise a constitutional concern." *Jones v. Anderson*, 116 F.4th 669, 679 (7th Cir. 2024).

Because no reasonable fact finder would conclude that the conditions in North 2 were objectively, sufficiently serious so as to deny Walker the minimal civilized measure of life's necessities, thereby creating an excessive risk to his health and safety, Walker's Eighth Amendment conditions of confinement claim in Count 1 fails.

### III.     First Amendment Retaliation

Butler next argues Walker has failed to meet his burden of proving she retaliated against him for filing grievances. Butler asserts that Walker can present no evidence demonstrating that she retaliated against him by moving him to North 2; at most, Walker merely speculates that because he was moved after he wrote a grievance, the move must have been retaliatory.

In response, Walker argues that he filed a grievance on June 2, 2014, naming Defendant Butler and complaining about not having a notary or adequate access to his legal materials and the law library. He also filed a grievance on October 7, 2014, complaining about an institutional policy prohibiting the use of toilets when visiting departments within Menard such as health care and the library. Both grievances were denied by Butler or her designee on August 15, 2014, and received by Walker on August 25, 2014. Then, on December 4, 2014, Walker was ordered to pack up his property and move into North 2. Shortly thereafter, he received notice that his motion for a restraining order against the officers in the East Cell House had been denied.

Prison officials may not retaliate against inmates for filing grievances, lawsuits, or otherwise complaining about their conditions of confinement. *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020). "First Amendment retaliation cases require the petitioner to show that the speech or activity was constitutionally protected, a deprivation occurred to deter the protected speech or activity, and the speech or activity was at least a motivating factor in the decision to take retaliatory action." *Id.* Speculation and hunches about a defendant's motive is not enough to defeat summary judgment. *Turley v. Rednour*, 555 F.

App'x 606, 609 (7th Cir. 2014) (citing *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008)).

Walker argues that the timing of his grievances and the denial of his motion for a restraining order against the prison officers suggests that Butler moved him to North 2 in retaliation for his First Amendment activity. It is true that suspicious timing can constitute circumstantial evidence in support of a retaliation claim. *See Manuel*, 966 F.3d at 680. But "[s]uspicious timing alone will rarely be sufficient to create a triable issue because '[s]uspicious timing may be just that—suspicious—and a suspicion is not enough to get past a motion for summary judgment.'" *Id.* at 681 (quoting *Loudermilk v. Best Pallet Co.*, 636 F.3d 312, 315 (7th Cir. 2011)).

Here, the timing is not even suspicious. Walker's grievances were denied on August 15, 2014, but he was not moved until December 4, 2014—nearly four months later. While Walker provided no evidence of the date he filed his motion for restraining order, the Court takes judicial notice of the records from his Cook County case, which shows that the motion was filed on April 2, 2014. Furthermore, at the time Walker was moved to North 2 on December 4, 2014, the case was still ongoing. Briefs and exhibits were filed on December 12, and December 16, and the case was transferred to Randolph County, Illinois, on January 2, 2015.[2] Thus, no reasonable juror would find—based on timing alone—that Walker's move to North 2 was in retaliation for seeking a restraining order against the East Cell House officers.

Because Walker has provided nothing more than his own speculation that his

---

[2] *See* Clerk of the Circuit Court of Cook County, https://casesearch.cookcountyclerkofcourt.org/Civil CaseSearchAPI.aspx (last visited Apr. 4, 2025).

protected speech was a motivating factor for his move to North 2, his First Amendment retaliation claim also fails.

## CONCLUSION

For these reasons, the Motion for Summary Judgment filed by Defendant Kimberly Butler (Doc. 67) is **GRANTED**.

Plaintiff James Walker shall recover nothing. The Clerk of Court is **DIRECTED** to enter judgment accordingly and close this case.

**SO ORDERED.**

DATED:   April 4, 2025

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**